Clerk, please call the next case. Street 10-0040. Illinois Cement v. Specialty. Counsel. May it please the Court, Mr. Gadsden. Miles Cahill on behalf of the Illinois Cement Corporation. This matter is before the Court today on Illinois Cement's appeal of an Industrial Commission decision awarding benefits in a hearing loss claim to Mr. Casolari as a result of a purported exposure at the Illinois Cement plant. He proceeded under the Occupational Diseases Act, correct? He filed it under the Workers' Compensation Act. He didn't specifically identify whether he was proceeding under the Occupational Diseases Act or the Workers' Compensation Act when the matter was tried. He didn't, to my knowledge, make any specific recollection under the, any election under the record. Mr. Casolari, the Commission has awarded, they reversed the decision of the arbitrator which found the man had not proved an exposure, an appropriate exposure under the Act for the hearing loss, the hearing exposure, noise exposure. The Act has been amended over the years and in the most recent amendments in February 1 of 2006, the legislature placed a specific presumption of hearing loss in terms of certain employments. That presumption did not include cement workers, steel workers, jackhammer operators. In this instance, Mr. Casolari, evidence was introduced in terms of the ambient noise at the plant and the hearing loss protection that was provided to Mr. Casolari. In terms of scientific evidence or reliable evidence as it relates to the exposure, the Commission has relied on Mr. Casolari's testimony that he did not believe that the plugs were effective on the case. That testimony was objected to and stricken by the arbitrator and no appeal or question concerning that evidence being allowable was ever presented by the petitioner in this case. So the petitioner said in his perception the protection did not afford him sufficient protection. If I were to believe that this room was loud or I were to believe that this room was dark, it would not make that a fact. In terms of the evidence relied upon at the time of arbitration, Mr. Casolari did not prove through any competent evidence that he didn't have protection that would bring his exposure below the levels of the 90 decibels under the statute. Well, when, according to the evidence, was the hearing protection program initiated? It started 10 years previously. Mr. Casolari already had a hearing loss document in beginning in 1970, as early as 1977, another hearing loss document in 2000, and another one documented in 2005, which the doctors relied upon to indicate that that was a sign, since he began using hearing loss protection in the 1990s, the fact that he continued to have hearing loss indicates that it was age-related hearing loss rather than a continuing occupational exposure. Well, he has a doctor's opinion. Eilers, it goes the opposite, doesn't it? No, it doesn't go the opposite. If you read carefully, the commission relied on his testimony that he took the earplugs out six times a day to change them out, and that he didn't think the things were effective. Dr. Eilers was never presented those facts to rely on those facts to say that his hearing loss was related to the exposure that he testified to. The things that he complained about in that kiln room were never mentioned in Eilers' deposition. The noise he complained about and the inability to use the hearing muffs and the plugs that he testified at arbitration was never reviewed or relied upon by Dr. Eilers. How many years did he work there when there was no ear protection? He worked with Marquette Cement in the 30 years beginning. He had a 30 to 31-year work-life expectancy, worked with Illinois. So for about 15 years he didn't have any protection. Working for Marquette Cement, not the employer in this case, he worked without hearing loss protection. Is that not a significant period of time? That is a significant period of time, but that, number one, that would be a significant period of time if an expert testified that that was his loss. Dr. Eilers was not presented testimony of the hearing loss or presented testimony of what was testified to at the time of arbitration. He merely said the man was exposed to up to an excess of 100 decibels and above for a period of 31 years. Dr. Eilers was never provided any specific facts as what was relied upon by the commission and what was found to be relied upon. The petitioner has an opportunity to present evidence concerning his purported exposure that can be put in through appropriate testimony. In this instance, a person who merely says in his perception and his belief it wasn't effective does not refute the evidence that was introduced at the time of trial. Because of that, the commission decided that it was up to the respondent's burden to prove that there was, in fact, other hearing loss exposures after he testified to his perception or belief there was. I think the commission improperly shifted the burden to the respondent for us to prove that there was a hearing exposure or a noise exposure outside the place of employment, and the commission also mistakenly relied on Dr. Eilers who had no facts whatsoever as to what his exposure was. Dr. Eilers was asked through multiple pages of his deposition as to what specifics he relied upon concerning the exposure, what specifics he relied upon concerning the mitigation of the exposures, and he had none of that information. What about the argument under the Wagner case? It's possible that the ear protection was not totally adequate, and the claimant himself testified that sometimes because of sweat and other things he had to keep taking the plugs out of his ears? For a matter of seconds. And if he had testified or had some expert testify to that, but his perception that it's not effective. In Wagner castings, that employer actually was giving people cotton balls to use, and they stipulated or admitted at the time of trial that that hearing loss wasn't sufficient to protect or reduce the decibel levels. So the commission's relying on a case where the respondent stipulated that the exposure was present is improper. The commission's failure to follow the statute and their own precedent under Section 19E in the Fraser case is also improper. Well, as I understand it, the claimant testified specifically, you've been alluding to it, that the earplugs did not stop all of the sound. He could hear different sounds, et cetera. So why couldn't the commission have believed that testimony? You could hear plenty of sounds. That testimony does not scientifically establish that he was exposed to some decibel level of 90 degrees or above for a period of time. The fact that you can hear a sound doesn't mean that it has reached a level. You can hear sounds. A whisper starts at 30 decibels. Normal conversation goes to about 60 to 70. You can hear plenty of sounds without it reaching the level. What about Dr. Horowitz's testimony? Didn't Horowitz acknowledge that his hearing loss, the claimant's hearing loss, progressed, even during the period of time he was wearing ear protection? And that was the basis for Horowitz to believe that this was an age-related hearing loss and not noise-induced, the fact that it continued. And the fact that the protection, and Dr. Eilers also indicated that if the protection was afforded, he would have stopped or would have precluded additional noise-induced hearing loss. So that is probative of the fact that this is an age-related hearing loss. Now, as it relates to the exposures and the statutes and the loss that this man had beginning in the 1970s, the arbitrator had found, and prior industrial commission president had found, that that would begin the running of the statute of limitations when the petitioner was aware of that loss. This Court is not bound by any industrial commission precedent, but the industrial commission under Section 19E is bound by its own precedent and by statute is supposed to compile records of the industrial commission decisions and rely upon them when ruling. This makes sense in the Frazier, in the Bridgestone case, Frazier versus Bridgestone. Frazier is a commission case, right? I'm arguing that the commission under Section 19E in the state statute is obligated to follow its own precedent. In fact, the commission didn't do that in this case. Was that binding on us? The commission is not binding on you, but the commission is supposed to follow its own statute. The finding of the statute of limitations beginning to run. So if we make a decision affirming the commission, we're saying they didn't follow the statute? If the commission's decision, the commission didn't, you'd be finding, that would tacitly affirm the commission not following its own precedent in the Frazier versus Bridgestone case, the commission relying on incompetent lay testimony rather than scientific evidence. What are we saying that way? Did we say anything in Wagner? In Wagner, that was accepted by all parties. The man had an exposure above the level of 90 decibels because they stipulated that they used cotton balls instead of actual hearing protection. Hearing protection was not afforded in Wagner to bring the protection and bring the man below the appropriate decibel level. If a man is aware of a hearing loss exposure and he attributes that hearing loss exposure to his work, the Workers' Compensation Act has many provisions, and I would presume that when the legislature wrote the act, they put them in appropriate order in terms of the importance. If the man is aware of a hearing loss, he should notify his employer of that loss and mitigate his damages or begin to mitigate his damages. And they didn't know about this problem he was having? They told him to follow up with his own doctor. He did follow up with his own doctor for years, and his own doctor didn't make any comment, and those records were introduced, and there was no finding or opinion from that doctor that it was a noise-induced hearing loss. They knew, objectively everyone knew, that there was a hearing reduction beginning in the early, in the late 70s. Whether that was related to an age-related hearing loss or a noise-induced hearing loss is the issue. If the petitioner was, in fact, of the belief that he had a hearing loss, there should be some obligation for him to mitigate his damages and to file a claim and notify his employer of this so there would be a reduction in any potential risk. So how does that exactly tie into the statute of limitations that was construed in Wagner? The statute of limitations was construed in Wagner because, again, they stipulated the man had a continuing exposure on the case. It's not stipulated. There's no evidence that this man continued to have a harmful exposure to noise. Other than his testimony. Other than his testimony. His testimony, which was objected to, and the employer indicated it was not probative of any scientific reduction of the fact that those hearing, that hearing protection was not, did not afford protection to him. It was not allowed for that evidence, and that issue wasn't preserved by the petitioner in any of the appeals throughout the commission level. Does it make a difference if this proceeded under the Act, Workers' Compensation or Occupational Disease Act? Would it make a difference on the limitations issue? In terms of the proofs on, the Occupational Disease Act will still actually require a harmful exposure on the case or exposure to the risk. Does it require this time frame? The time frame, it would still have to be, it would still fit within the manifestation period of the loss, and the Occupational Disease Act would require, the still showing of the exposure to the actual harmful decibels without the appropriate protection and the causal connection to the hearing loss. All that is true, but how about the limitation under the Occupational Disease Act? The Occupational Disease Act was... Because what you're saying now is back in the 70s, he should have or would have been aware that he had a potential claim for loss of hearing, right? Correct. And you're saying he didn't bring that claim. We as the business, the employer, provided hearing protection that stopped his exposure for the last 10 years of his work with Cement, Illinois Cement. And therefore, he's untimely. Correct. I mean, that's what you're saying now. Correct. And the Occupational Disease Act, is it within a period of time after his last day of employment? The Occupational Disease Act actually discusses the last day of exposure to the harm or the hazards of the disease. And this man testified he never even used the earplugs when he was in the lunchroom and he didn't take them out. He used them when he was in the control room. So the Occupational Disease Act does protect employees from disease, but they talk about the exposure to the hazard of the disease. If you have a hearing protection and there is no noise below the ambient levels necessary for the exposure level, you're not exposed to the hazards of the disease. If you have chemicals inside a plant in a sealed container and the container remains sealed, you're not exposed to the hazard of that chemical. Even under the Occupational Disease Act, there has to be some harmful exposure or the actual exposure for an element of proof. If he had moved from the, as a welder operator, inside, made him president of the plant, and he never left the confines of an office where there was no exposure to the, the plant had exposure but the office didn't, there's no exposure to the hazards of the disease as discussed in the Occupational Disease Act. And yet his hearing loss continued even during the period of continuous use of the ear protection, correct? Which, according to the medical evidence, and Dr. Eilers did not refute that, that that is evidence of the fact that it was age-related loss and not a noise-induced protection. But that's a fair question for the commission, isn't it? No, not really. If the commission doesn't have a contrary medical opinion, Dr. Eilers admitted it. Dr. Eilers admitted he didn't know what the, what was related, and he didn't ask the petitioner any great detail as to what the other disease processes he had other than the blood pressure and diabetes. So the commission has a preference. If two experts had testified, if Dr. Eilers had indicated, I've ruled out a disease process and I believe he had a continuing exposure to noise, Dr. Eilers was never asked about any specifics, and he knew nothing about the exposure for the three years before November 19 of 2003. He had nothing to quantify as whether there was a continuing exposure. So the commission, since he has no information, the commission cannot look at his opinion and divine and graft on to something that he never testified to, never knew, and had no information to rely on. He said it was 30 to 31 years of work without any protection. That's what he relied upon. There was no indication of the fact that there's a difference between noise-related and the fact that it continued proved that it was related to noise exposure as opposed to a disease process. Thank you. Counsel, please. He's the court counsel. I do have a question here. I'm getting confused. This court call is confusing at times, but is this under the, which act is this being brought under, occupational disease or contract? Actually, good question. Unfortunately, I didn't bring it in. I was tempted to go run back to my seat to see if I could find the application for adjustment claim, and I don't have that. The problem is, is that very simply, I think that the case law cited by the commission talks about the Occupational Disease Act and how it applies and how they looked at the time of exposure and the last exposure, and simply put, all the testimony seemed to circle around that specific issue of when the last exposure was on the statute of limitations. The belief is that then the Occupational Disease Act was what was used. I can only look at that from. Does it make a difference? I don't think it does under the circumstance. What happens specifically is that under the Illinois Workers' Compensation Act, we've gone ahead and, for example, using carpal tunnel cases, we've also looked at the last exposure date or last work date. And so the same thing would apply under the circumstances here. Now, we go ahead and we look at a gentleman who's worked at literally the same plant but with different employers for roughly 31 years. Now, 20 of those years or maybe a little bit less, he had worked for Illinois Cement. At Illinois Cement, we know at least from the decibel meter readings that they took, as we know employees rarely take their own, that this gentleman was exposed to decibel readings well above the minimum limit. And keep in mind, the higher the noise level, the lower the time level of exposure required to develop this loss. And what happens is he was right next to, physically next to, within yards away of rock-crushing machinery and often exposed to this on a regular basis throughout the day, sometimes as little as six hours, sometimes as much as 12 hours. What about the last 15 years? During the last 15 years, 10 of that, he had some level of hearing protection. Now, the interesting part is that if you look at that, during the first two to three years, he was using rubber earplugs. Now, there's no indication in any of the records that this provided any significant level of hearing protection. In fact, the testimony was that something as little as just talking or chewing your gum would go and cause that to fall off and dislodge. We know that over one portion of time. We also know that over the next portion of time, they went to foam earplugs, which had to be regularly changed, and the petitioner indicated in his perception it provided no protection or little or no protection. What happens is that, for example, we're in a cement plant, caked with dust, as described by the petitioner, as you know, we're crushing rock there, and what happens is that he goes ahead and says I had to pull these out, change them because they would just essentially fall out on their own if not. Now, what occurs is that he says then the next level of protection was the earmuffs. Now, the earmuffs themselves wouldn't properly seal because of the sweat and other things that occurred. Let's assume all of that is true, and you obviously have the very best knowledge of the case. Your opponent purports to say that this is a very simple case. In essence, he is opining that there is no competent evidence in the record to establish that the hearing loss was due to exposure other than the normal aging process. So, and he says the decibel levels are within normal limits, the man is aging. So what evidence can you call our attention to that refutes his very simple conclusion that this was due to the normal aging process, not the exposure? Simply put, Dr. Eilers was asked that question at the deposition. Dr. Eilers did refute it. He said there's no known disease process that is causing the problem. He looked at things such as the, well, coronary artery disease, things of that nature, which would go ahead and narrow the vessels. He also talked about other conditions that might cause the loss of the natural hearing, or natural loss of hearing. What happens is that Dr. Eilers said there's nothing to support that thing, at least in what he's been told. Nothing to support what? Nothing to support the natural loss of hearing that would occur. For example, they talked about diabetes. Well, he was in a pre-diabetic state. He was controlled by his diet. He had no insulin use. And Dr. Eilers says when you look at those things, there's nothing to show that these factors would have caused the natural hearing loss that they claim exists. Now, what happens is we also need to keep in mind that under the circumstances, the hearing loss has, work does not have to be the only cause. It needs to be just a cause or contributing cause. Now, we know the severe nature of the exposure to this. For example, we know that they would give him earmuffs to wear, but the problem is he talked about the fact that up to half the day, he couldn't wear those earmuffs, even in the last few years of his work experience. The simple reason is that it was incompatible with his welding abilities. He couldn't go ahead and wear the mask and the earmuffs with the type of earmuff that was supplied. Now, what they did was they brought in the gentleman from the plant who goes and says, well, these other earmuffs would have worked. But the problem is that said, there's no indication that he used those. The only indication is that he used faulty earmuffs that would go ahead and not work with the welding shield, and as a result, exposed to the continuous operation. The other person said you used the earmuffs so that the band is back at your neck. Correct. It's the same earmuffs. They actually had, if I remember correctly, two styles of earmuffs that occurred, and they changed to a better quality earmuff a little bit later. But either way, even if you wore them at the back of the head as described by their witness, what happens is simply put, the petitioner indicated that he couldn't wear them and he did not wear them with the welding mask and the equipment that he was provided. They got in the way. And so we know specifically that there's nothing indicating in the record that this gentleman actually was capable of wearing it with the work he did. Under those circumstances, I'd ask the Court to consider the evidence that's been presented. Before we get too far into that, your opponent obviously is challenging the basis for Eilers' opinion. Did Eilers provide a causal connection between the work exposure the last 15 years and the claimant's condition of well-being? Yes, he did. In fact, I don't recall how many times during the deposition, but on multiple occasions he did that. He continued to repeat it throughout. What exactly? Give us succinctly what did Eilers testify to that establishes the causal connection that he's saying is not there? Dr. Eilers went ahead and said that this gentleman's work exposure, and he went ahead and talked about the decibel exposure that he suffered, directly was a cause of this gentleman's loss. And he went ahead and cited the fact that he didn't believe there was any natural cause or that any natural cause was the principal reason for this gentleman's loss. And we just need to look practically at the facts we have before us. The gentleman was exposed to crushing of rock within yards of his head going on on a regular basis, and you only need to be exposed to a short time of that to suffer the loss. And we also have the defendant's own doctor going ahead and indicating that, hey, listen, he started the loss, he had this loss before hearing protection was provided, and this loss did continue. Now, that's consistent with the fact that he continues to be exposed to the high decibel levels and that the loss itself would not be a natural loss because the natural loss seems to go ahead and run in fits and starts. It's not a consistent running loss. Also what happens is we know after even the hearing protection was at least provided in the plant, this gentleman talked about the fact that it could not be used at times and what was available was faulty. For the reasons stated, I'd ask that this court go ahead and find that the commission made a correct decision and find that this gentleman should be properly compensated. Thank you. So you don't know what act, you don't know which act this was brought under? I would be lying to the court if I had a full understanding of that. My belief is it was the Occupational Disease Act, but in either way, it still comes up with the same decision because under both acts we look at the last date of exposure typically. And we can under the current case law. And certainly when we use Wagner, we're right there. Wagner is a very similar set of facts, similar circumstances. One thing that counsel talks about is the fact that, for example, Wagner, they admitted the exposure was there. Well, certainly the exposure is here, too. But one must look at whether or not the dampening effect of this equipment they provided really reduced it to such a level that this gentleman didn't then suffer the exposure. Thank you, counsel. Thank you. Dr. Eilers in his deposition only referenced a 30-, 31-year career in a cement plant. He made no reference whatsoever to 15 years. Did the commission in its decision go through all of these matters in quite considerable detail? The commission went through considerable detail and decided to shift the burden to the respondent to prove there was another noise exposure, decided to presume there was an exposure, even though the petitioner did not object to the introduction of the fact that his hearing protection would have afforded a 25- to 30-decibel reduction of the exposures. You can't merely look at the raw exposures. Dr. Eilers relied on the raw exposure of 100-plus degree decibels and did not have any information and did not take into any consideration as a reduction value of 25- to 30-decibels. Documents that were introduced by the petitioner, introduced at the time of arbitration, the petitioner made a general objection and then the arbitrator allowed the evidence in for its probative value to be argued in the proposed decision. No specific objection to that scientific evidence was introduced, which would show there would have been a mitigation of those decibel levels, and it doesn't matter if there's 140 degrees of ambient noise in a room. If it's reduced by 20 degrees, it's down to 84 degrees, which does not reach the requisite level for this man to take the first step in his case and have the requisite exposure, let alone putting it on top of the medical evidence to prove there is a causal factor. Which act did they claim? I have no recollection, and to my knowledge, there was no reference to any of that. The Commission's decision specifically says it was decided under the Occupational Diseases Act. They might have decided under the Occupational Diseases Act. Page 7 of the decision. Of their decision. But I have no recollection at trial of the petitioner ever opting to pursue it under the Occupational Diseases Act. But isn't it important what the Commission said? And as Judge Hoffman has pointed out, the Commission said hearing loss claims are properly considered under the Workers' Occupational Diseases Act. Well, the Commission, and to tell you the truth, if a petitioner misperceives his remedy, he can actually ask for the matter to be decided. The statute does provide for that. In this case, in terms of scientific evidence and the mitigation of those noise levels, there is no indication this man was exposed to 90 decibels. One final question. What if the condition of well-being of the claimant was a combination of noise exposure and the aging process? What exactly is the case? You'd have to start with the noise exposure. Then he has to have a doctor testify to it. And then if it is in part, I would concede if it is in part, but you have to prove that by competent evidence. You're not allowed any presumption merely because it's a rock crushing plant or a cement plant. The legislature has never said that. They have a burden of proof for the petitioners. Thank you. Thank you. The Court will take the matter under advisement for disposition.